UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

MARY A. DAVIDSON )
)
V. ) NO. 2:13-CV-306
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's application for disability insurance benefits under the Social Security Act were denied after a hearing before an Administrative Law Judge ["ALJ"]. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 13], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 15].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff was born on July 6, 1957. She was 53 years of age at the time her disability insurance "insured status" expired on December 31, 2010. She filed her application for disability insurance benefits on May 23, 2011, nearly 5 months after her insured status expired. She cannot perform her past relevant work as a dietary worker and cook, which was medium and semiskilled, or as a medical technician, which was heavy and skilled.

Plaintiff's medical history is set forth in her brief as follows:

> The Plaintiff apparently suffered an industrial injury in 1994 and suffered an injury to her right shoulder. She came under the care of Dr. A. Evan Lewis, Ph.D., M.D. who reported in May 1997, that the disability to her right shoulder from pain would be approximately 30 to 40 percent. He thought the prime source of her pain was in the achromioclavicular joint and he considered that joint to be 100% disabled. In addition, she had evidence of radiculopathy of the cervical spine at the C6/C7 level with numbness and tingling down the second and third digits of her right hand (AR 257). An MRI showed a C6/C7 disk abnormality which fit perfectly with the Plaintiff's complaints of pain radiating down the right arm. Dr. Lewis thought the Plaintiff would have a great deal of difficulty obtaining or retaining any kind of employment which would involve any kind of physical activity of the right arm but she might be able to hold a sedentary job which did not include use of a computer terminal (AR 258). The Plaintiff continued under the care of Dr. Lewis and in February 2008, he noted that she had depression and obesity. She was doing well on Lexapro but failed various other drugs (AR 158). In May 2008, Dr. Lewis noted that the Plaintiff had been shaking and depressed and had increased her Lexapro. She was also pre-diabetic which might be related to her depression (AR 156). In July 2008, it was noted that she was having depression and panic and that she was shaking and crying and was agitated and could not sit still (AR 154). In September 2008, the Plaintiff was suffering from shoulder pain and Dr. Lewis noted that she had multiple defects with difficulty with her clavicle and rotator cuff (AR 153). In December 2008, she was diagnosed as suffering from

2

foot pain caused by Morton's neuromas which had previously been removed twice (AR 150). In March 2009, she was suffering from diabetes mellitus 2 (AR 148).

In June 2009, she came under the care of Dr. Edward Griffin. He diagnosed her as suffering from diabetes, hyperlipidemia, a history of cervical cancer, PES cavus and tobacco addiction (AR 172).

The Plaintiff came under the care of Dr. Terry Nye in 2010. It was noted that she had diabetes mellitus, cervical disc disease, mood disorder, tobacco addition, a history of Morton's neuromas x 2, cervical cancer, hyperlipidemia, a thyroid cyst in 1994, and pes cavus (AR 177). In June 2010, it was noted that her left should had hurt chronically for a number of years (AR 180). She also had GERD and depression (AR 182.)

The plaintiff was seen by Dr. David M. Pryputniewicz, a neurosurgeon. She was complaining of bilateral lower extremity pain, numbness, and some lumbar pain. It was noted that she had low back pain which had waxed and waned since 1994 and had a significant increase of pain in April 2011. An MRI in April 2011 had revealed central canal stenosis of L4-5 resulting in central canal stenosis. Dr. Pryputniewicz diagnosed lumbar stenosis, synovial cyst, and lumbar herniated nucleus pulposus. She could not return to her work at that time (AR 213).

The plaintiff was seen by Dr. W. Turney Williams, a pain specialist, in June 2011 for low back and bilateral lower extremity pain. He diagnosed lumbar degenerative disc disease, lumbar spinal stenosis of the L4-5 of the synovial cyst, lumbar radiculopathy, chronic pain syndrome, and a history of diabetes (AR 216).

The plaintiff came under the care of Dr. Michael Kauzlarich, D.O., in December 2010. He noted her chief complaint was chronic right shoulder and back pain after a severe industrial accident several years ago. He diagnosed type 2 diabetes mellitus and cervicothoracic somatic dysfunction (AR 219). On December 10, 2010, he assessed her as having cervicothoracic and lumbar somatic dysfunctions and prescribed OMT techniques (AR 221). She underwent therapy (AR 225-230). In August 2011, Dr. Kauzlarich opined that the Plaintiff could not perform sedentary work prior to December 31, 2010 (AR 295). On January 7, 2011, he described the Plaintiff as suffering from cervical, thoracic and lumbar somatic dysfunction (AR 299). On April 25, 2011, he noted that she had spinal stenosis as well as thoracic, cervical and lumbar somatic dysfunction (AR 303). On May 9, 2011, he noted that an MRI had showed some central canal stenosis at L4-L5 as well as synovial cyst on the right side encroaching on the posterior aspect of the right L5 nerve root. She also had a left L4-5 herniated disc which was encroaching on the L5 region and a slight deformity of the T12 vertebral body and kyphosis of T11-T12. The combination of those findings had given her a fair amount of back pain and a fairly limited mobility with some difficulty walking steadily (AR 304).

A state agency reviewing physician, Dr. Frank Pennington, opined that the Plaintiff's evidence was technically insufficient (AR 234), because the medical evidence in the file was not for the relevant time from the alleged onset date to the date last insured and there was no medical evidence from the relevant time frame (AR 237). Similarly, the state agency reviewing psychologist, Dr. Amin Azimi opined that there was insufficient evidence (AR 239).

The plaintiff continued to be cared for by Dr. David M. Pryputniewicz, a neurosurgeon. In September 2011, he noted that she ambulated flexed at the waist (AR 269). H noted that an MRI of the cervical spine on September 8, 2011 revealed spondylitic changes at C5-6 and C6-7 resulting in central canal stenosis. He also diagnosed lumbar stenosis with neurogenic claudication, unspecified synovial cyst, and a lumbar HNP (AR

3

270). He opined that the Plaintiff was disabled (AR 271). She underwent an L4-5 decompression with arthrodesis (AR 276). On October 4, 2011, Dr. Pryputniewicz reported that the Plaintiff could not return to work at that time (AR 278). He similarly opined that the Plaintiff could not return to work in November 2011 (AR 284). In December 2011, x-rays showed progression of the fusion at L4-5 and maintenance of spinal alignment (AR 287). In November 2011, Dr. Pryputniewicz opined that the Plaintiff could not do sedentary work and per the patient she could not perform that activity before December 31, 2010 (AR 267). In December 2011, Dr. Pryputniewicz opined that the Plaintiff might return to her previous employment and activities as a homemaker and could gradually resume normal daily activities (AR 288).

In October 2011, Dr. Kauzelarich noted that the pain in the Plaintiff's legs had been gone post surgery but she still had a history of type II diabetes and cervical somatic dysfunction (AR 309). An MRI of the cervical spine showed chronic degenerative disc disease with moderate central spinal canal and moderate bilateral neural foramina stenosis at C6-C7 and the right posterolateral bulging disc osteophyte complex at C5-C6 causing moderate right spinal canal and moderate right neural foramina (TR 313) and moderate right neural facet arthrosis at C4-C5 and C5-C6 (AR 314).

The Plaintiff came under the care of IHS Psychology Associates in August 2011. She was diagnosed as suffering from major depressive disorder, moderate vs PTSD after losing a baby and being assaulted by her brother as well as grief at the loss of her mother (AR 331). It was noted that the Plaintiff had been seen by Dr. Kutty in 1996 to1999 and had been given a diagnosis of manic depression with more depression (AR 332).

On July 27, 2012, the Plaintiff was evaluated by Dr. Judy B. Millington, Ph.D., a clinical psychologist. She diagnosed the Plaintiff as suffering from bipolar II disorder, post traumatic stress disorder, degenerative disc disease and diabetes, and a history of abuse and financial stressors. She opined that the Plaintiff's GAF was 52 (AR 345). She opined that the Plaintiff had a seriously limited but not precluded ability to deal with work stresses and function independently as well as to understand, remember and carry out complex job instructions (AR 347). She opined that the Plaintiff met Listing 12.04 of 20 C.F.R. § 404, Subpart P, Appendix 1 because of an affective disorder (AR 349). She thought the Plaintiff had anhedonia, decreased energy, feeling of guilty or worthlessness, thoughts of suicide and flashbacks with pressures of speech, flight of ideas, decreased need for sleep by history (AR 351). She also had recurrent and intrusive recollections of a traumatic experience (AR 352). She opined that the Plaintiff had marked limitations in activities of daily living, moderate limitations in her ability to maintain social functioning and often had deficiencies of concentration, persistence or pace and had one or two episodes of deterioration or decompensation in work or work like settings (AR 356).

[Doc. 14, pgs. 2-7]

At the administrative hearing, the ALJ took the testimony of Ms. Donna Bardsley, a Vocational Expert ["VE"]. Ms. Bardsley first classified the plaintiff's past relevant work as set out above, noting plaintiff had no transferrable skills. The ALJ then asked her to assume a person with plaintiff's vocational characteristics who could "do light work, occasional

4

posturals, no ropes, ladders, scaffolds, avoid concentrated exposure to hazards, limited to simple, routine repetitive work." Ms. Bardsley stated there were 9,000 jobs in the regional economy and 7.5 million in the nation. She was then asked to assume the same person with a sit/stand option being required. She stated there would be still be 3,800 jobs in the region and 4 million in the nation. (Tr. 41-42).[1]

The ALJ found that the plaintiff had medically determinable impairments while she was still insured of a right shoulder injury and depression. (Tr. 14). He noted that she had been treated for neck and shoulder pain in March, 2010, and for chronic left shoulder pain in June, 2010. He then discussed her further treatment for shoulder pain and back pain by Dr. Kauzlarich starting December 1, 2010. He noted that her condition improved with therapy until she fell in April, 2011. An MRI taken after the fall "showed central canal stenosis at L4-L5 secondary to synovial cyst on the right with left disc protrusion on the left at L4-5 resulting central canal stenosis. There was also multilevel degenerative disc disease." He noted that lumbar spine surgery was performed in September, 2011, but that in December, 2011, Dr. Pryputniewicz, her treating surgeon, "advised her she could return to her previous employment and activities as a homemaker." (Tr. 16).

The ALJ then found that there was no indication that the plaintiff sought treatment for cervical spine and neck pain until after her insured status expired, the first complaint of such a condition being January 7, 2011 in a visit to Dr. Kauzlarich, which he treated with

---

[1] The VE also identified jobs at the sedentary level which such a person could perform. However, at the time her insured status expired, and at the time of the hearing, plaintiff was a "person closely approaching advanced age," and would have been disabled under Rule 201.14 of the Medical/Vocational Guidelines even if she could perform a full range of sedentary work.

Case 2:13-cv-00306-JRG-DHI  Document 17  Filed 12/11/14  Page 5 of 11  PageID #: 430

osteopathic manipulative therapy resulting in "good correction." (Tr. 16).

He discussed her diabetes and found it to be controlled to the extent that it was "without complication." He discussed her depression and stated there was no diagnosis in the medical records prior to the expiration of her insured status, but that there was a statement to her doctor on March 8, 2010, that she had seen a psychiatrist 10 years previously. She did not express any mental health complaints to any practitioner in the record until August 10, 2011. (Tr. 16).

He noted that the medical records showed the plaintiff had sustained a work-related shoulder injury in 1994, but had returned to work for several more years. (Tr. 16). Her "Work History Report" showed she had worked from May 1982 until January 1996; from September 1999 until May 2001; from July 2001 until September 2001; from January 2003 until August 2003; and from August 2003 until April of 2006. (Tr. 120). He noted that the plaintiff complained of not being able to walk without assistance, but found "no indication in the record [that she] had those severe problems prior to her date last insured...," and had testified she walked three miles every evening with her brother. (Tr. 17).

The ALJ noted that the plaintiff had told Dr. Kazlarich in February 2011, that she had done "pretty well over the last month since her previous manipulation" but told him that she had been working with her dogs and one had "jumped on her back and knocked her over." She told him in May, 2012, that she had once again been working with her two dogs and had strained her back doing so. (Tr. 17).

The ALJ pointed out that the record showed in March 2010 that she was taking Lexapro for her depression and that it was "helping her mood," with no further record

6

regarding mental health treatment until August 2011.

The ALJ then discussed the medical opinion evidence. He stated that Dr. A. Evan Lewis, who treated the plaintiff in 1997, had opined she a 30 to 40% disability resulting from her right shoulder injury, and "a 100% disability in this joint." Given the plaintiff's long work history following this report, the ALJ found that Dr. Lewis' opinion was "not germane to the period at issue." (Tr. 17).

Dr. Kauzlarich's opinion dated August 12, 2011 that the plaintiff could not perform any exertional activities and that she was in that condition prior to the expiration of her insured status was rejected by the ALJ. He stated that Dr. Kauzlarich only saw the plaintiff on two occasions prior to December 31, 2010, and that his subsequent records indicated plaintiff experienced substantial improvement and relief from his treatments. He likewise rejected Dr. Kauzlarich's letter dated June 12, 2012 that the plaintiff was incapable of even sedentary activity after her back surgery because of Dr. Kauzlarich's limited treatment prior to December 31, 2010, and because Dr. Pryputniewicz who had performed the surgery stated in December 2011 she could return to her previous employment and homemaking activities. (Tr. 17).

He gave great weight to the reports of the State agency physical consultants who stated "that there was no evidence available prior to the date last insured to determine impairment severity." A similar finding by the State agency mental health consultants was also given great weight. (Tr. 17-18).

The ALJ then stated that he had concluded that the plaintiff "did not have a physical impairment or combination of impairments that significantly limited her ability to perform

7

basic work activities" as evidenced by her lack of medical treatment prior to the date last insured. (Tr. 18). Alternatively, he stated that even if the plaintiff was "found to have a severe impairment restricting her to light exertion with postural and environmental limitations with a sit/stand option, as well as mental limitations" the VE identified a significant number of jobs which she could perform. Accordingly, he found that the plaintiff was not disabled through the expiration of her insured status on December 31, 2010. (Tr. 18-19).

Plaintiff asserts that the ALJ erred in finding that the plaintiff did not have a severe impairment prior to the expiration of her insured status, asserting that she had both severe physical and mental impairments. The plaintiff also argues that the ALJ erred in his rejection of Dr. Kauzlarich's opinion as a violation of the "treating physician" rule. Finally, because of the asserted lack of contrary medical proof, Dr. Kauzlarich's opinion is entitled to controlling weight under *Social Security Ruling 96-2p*. Accordingly, plaintiff asserts that this Court should find her entitled to benefits.

There is very scant evidence of a mental impairment prior to the expiration of the plaintiff's insured status on December 31, 2010, and even less that it was "severe." This is true even though, as plaintiff asserts, the level of proof required at Step Two of the sequential evaluation process to prove the existence of a severe impairment is low. It is a *de minimis* hurdle in the Social Security adjudicative process, and the law is clear that an impairment can be considered not severe if it is a slight abnormality that minimally affects work ability regardless of age, education and work experience. *See, Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988).

8

However, the same cannot be said regarding the plaintiff's physical impairments following her work accident in the 1990's. The letter from Dr. Lewis dated May 1, 1997 (Tr. 257-261) constitutes substantial evidence that she had a severe physical impairment in her shoulder long before her insured status expired in 2010.

Be that as it may, an erroneous conclusion that the plaintiff failed to meet her burden at Step Two of the process does not equate with proof that she was disabled and entitled to benefits. A great many workers, particularly as they grow older, engage in substantial gainful activity even though they have a severe physical or mental impairment. An error at Step Two can be harmless if the ALJ proceeds with the process through the remaining steps. Here, the ALJ made an alternative finding, based upon the hypothetical question and answer by VE Sanders at the hearing, that there were a substantial number of jobs which the plaintiff could perform if she were limited to a reduced range of light work. The question is whether there is substantial evidence to support the ALJ's question (Tr. 41-42).

Plaintiff asserts that there was not, stating that there is no medical opinion to contradict the opinion of Dr. Kauzlerich (Tr. 295). Furthermore, plaintiff urges that Dr. Kauzlerich's opinion that plaintiff is incapable of even sedentary work is uncontradicted and entitled to controlling weight as her treating physician.

However, as noted by the ALJ, her treating neurosurgeon, Dr. Pryputniewicz, in a treatment note dated December 27, 2011, stated that "the patient may return to her previous employment and activities as a homemaker." (Tr. 288). Dr. Pryputniewicz, who operated on the plaintiff's back on September 22, 2011, had also noted in his initial consultation with plaintiff on May 4, 2011 that plaintiff told him "that in April 2011, she began having a

9

significant increase in back pain." Dr. Williams, a pain specialist to whom she was referred by Dr. Pryputniewicz on June 2, 2011, stated that plaintiff indicated "that this pain started on 04/06/2011 when she was at Holston Valley Hospital picking up her mother. When she went up to the sidewalk she lost her balance and fell." (Tr. 215).

Besides this contradictory evidence showing a post-insured status injury and apparent recovery, the ALJ noted the success in relieving the plaintiff's pain by manipulations described by Dr. Kauzlarich's notes, at least prior to the aggravation of her injury in April 2011 which led to her eventual surgery, and the recovery noted by the treating surgeon.

There was thus contradictory medical evidence in the record, both in Dr. Kauzlarich's treatment notes and those of Dr. Pryputniewicz upon which the ALJ, as the trier of fact, could have discounted Dr. Kauzlarich's opinion. Contrary to plaintiff's assertion, this does not contravene *Social Security Ruling 96-2p*.

The question still remains as to whether there was an adequate medical foundation from which the ALJ could have fashioned his question to the vocational expert. It is true that the State Agency physicians shed no light other than to say her status prior to December 31, 2010 was uncertain, but that is often the case where a plaintiff waits several months after the expiration of insured status before filing an application. This is not the fault of the Commissioner. However, there is strong evidence that injuries in 2011 were what caused the serious conditions that led to plaintiff's surgery. And once again, Dr. Pryputniewicz indicates that post surgery she could have returned to work.

The ALJ's functional capacity set out in the question to the VE of a reduced range of light work with simple jobs to accommodate plaintiff's depression does not seem

10

unreasonable. Support is found for this in the treatment notes of both Dr. Kauzlarich and Dr. Pryputniewicz who found normal motor strength and range of motion (Tr. 227 and 212-213). Dr. Pryputniewicz also noted no muscle atrophy. As for the walking component of light work, plaintiff was walking 3 miles per day at the time of her final visit to Dr. Pryputniewicz in December of 2011. (Tr. 286). For all of these reasons, the Court does not find that the ALJ's question lacked foundation. It was more than reasonable.

Therefore, the Court finds that there was substantial evidence to support the question put to the VE. The Court further finds that any error in not finding the existence of a severe impairment was harmless, and that the ALJ did not otherwise violate applicable regulations. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 13] be DENIED, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 15] be GRANTED.[2]

Respectfully submitted,

  s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).